## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JOHN JONES,                              :        Case No. 5:14 CV 1231

      Petitioner,                     :

vs.                                      :

ALAN LAZAROFF, WARDEN,                   :
                                                  **MAGISTRATE'S REPORT AND**
                                         :        **RECOMMENDATION**

      Respondent.

## I. INTRODUCTION.

Pursuant to 72.2(b)(2) of the UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO LOCAL CIVIL RULES, this case was automatically referred to the undersigned Magistrate Judge for report and recommendation.  Pending are the Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254 (Docket No. 1), Respondent's Return of Writ (Docket No. 10), Petitioner's Traverse to Return of Writ (Docket No. 12) and Respondent's Reply (Docket No. 14).  For the reasons that follow, the Magistrate recommends that the Court deny the Petition for Writ of Habeas Corpus.

## II. SUMMARY OF FACTS

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  *Duncan v. Sheldon*, 2014 WL 185882, *3 (N.D.Ohio 2014) (*citing* 28 U.S.C. § 2254(e)(1); *see also Moore v. Mitchell*, 708 F.3d 760, 775 (6thCir.2013) *cert. denied*, 134 S.Ct. 693 (2013)).  The habeas applicant has the

burden of rebutting the presumption of correctness by clear and convincing evidence.  *Id.*

The state appellate court summarized the facts underlying Petitioner's convictions in *State v. Jones*, 2012 WL 4101097, *1 (2012).

> Five-month-old Jada Ruiz Jones stopped breathing sometime before 10:00 A.M. on the morning of March 19, 2010.  The first responders did not notice any external injuries, so they began resuscitation attempts and transported Jada to the emergency room under the impression that she may have been a victim of sudden infant death.  Their attempts to revive Jada were successful, but after initial test results came back in the emergency room, the full extent of Jada's condition became apparent.  Further testing confirmed that she had suffered one acute subdural hematoma, in addition to a previous one that was in the healing process, bleeding behind both eyes, numerous broken bones, and massive soft tissue bruising in the lumbar region of her spine.  After other possible causes of her injuries had been ruled out, doctors concluded that she had been shaken with enough force to cause her airway to be cut off, leading to cardiac and respiratory arrest.  Although Jada's heart was beating, her doctors concluded that she had suffered damage to her brain from lack of oxygen and blood flow such that her brain was dying.  Within twenty-four hours, they informed her family that she had no chance of recovery.  Nonetheless, Jada remained on life support for four months.  She died in her mother's arms on July 17, 2010, after life support was withdrawn.

> Once it became clear that Jada's injuries were the result of child abuse, suspicion focused on her mother, Deja Ruiz, and her father, Petitioner, both of whom were teenagers at the time.  Further investigation led to the arrest of Petitioner, who was alone with Jada, her twin sister, and their two-year-old brother from approximately 8:00 A.M. until the first responders arrived in response to his 911 call.

### III. PROCEDURAL BACKGROUND.

#### A.    *The Indictment*

Petitioner was a juvenile at the time of the offenses and the case began in juvenile court with felony charges.  The prosecutor moved for a transfer of jurisdiction to the Summit County Court of Common Pleas pursuant to the transfer provisions of OHIO REV. CODE § 2152.102.  On November 2, 2010, the Common Pleas Court of Summit County, Ohio, returned an indictment for:

| | |
|---|---|
| Count 1 | Murder, a violation of OHIO REV. CODE § 2903.02(B), as a proximate result of Petitioner committing or attempting to commit felonious assault, an offense of violence that is a felony of the first or second degree, a violation of Section 2903.02(B). |
| Count 2 | Murder as a proximate result of Petitioner committing or attempting to commit |

|   | endangering children, an offense of violence, in violation of Section 2903.02(B). |
|---|---|
| Count 3 | Felonious assault, a violation of OHIO REV. CODE § 2903.11(A)(1).  Petitioner did knowingly cause serious physical harm to Jada's head. |
| Count 4 | Felonious assault; Petitioner did knowingly cause serious physical harm to Jada, to wit:  bone fractures. |
| Count 5 | Endangering children, a violation of OHIO REV. CODE § 2919.22(B)(1), described as Petitioner did recklessly abuse Jada resulting in serious physical harm to Jada, to wit: injuries to the head. |
| Count 6 | Endangering children in that he did recklessly abuse Jada resulting in serious physical harm to said child, to wit:  bone fractures. |
| Count 7 | Endangering children, a violation of OHIO REV. CODE § 2919.22(A), which included the creation of substantial risk to Jada's health and safety by violating a duty of care, protection and support. |

(Docket No. 10-1, pp. 1-3 of 157).

**B.    *The Trial.***

On May 3, 2011, prior to the commencement of trial, Count 7--endangering children as

alleged under OHIO REV. CODE § 2919.22(A)--was dismissed (Docket No. 10-2, p. 5 of 157).  On

May 10, 2011, the jury returned its verdict, in writing, finding that Petitioner was:

1.    Not guilty of the crime of murder as contained in Count 1 of the Indictment.
2.    Guilty of the crime of murder as contained in Count 2 of the Indictment.
3.    Not guilty of the crime of felonious assault as contained in Count 3 of the Indictment.
4.    Not guilty of the crime of felonious assault as contained in Count 4 of the Indictment.
5.    Guilty of the crime of endangering children as contained in Count 5 of the Indictment and guilty of causing serious physical harm to the child.
6.    Not guilty of the crime of endangering children as contained in Count 6 of the Indictment (Docket No. 10-1, p. 6 of 157).

**C.    *Sentencing.***

On May 12, 2011, the court merged Counts 2 and 5 of the Indictment for purposes of

sentencing and ordered that Petitioner serve a definite term of 15 years to life, which is a mandatory

term for murder.  It was further ordered that Petitioner be placed on parole upon his release from

prison for a period of time to be determined by the Adult Parole Authority (Docket No. 10-1, pp. 9-

10 of 157).

**D.**     *Direct Appeal.*

On June 20, 2011, Petitioner filed a notice of appeal in the Court of Appeals of Summit County, Ohio (Docket No. 10-1, pp. 11-12 of 157). In his brief on the merits, Petitioner asserted a single assignment of error:

> Petitioner's conviction for murder through the commission of endangering children and for endangering children was based on insufficient evidence as a matter of law and was against the manifest weight of the evidence (Docket No. 10-1, p. 24 of 157).

On September 19, 2012, the court of appeals affirmed Petitioner's conviction for murder and endangering children. The court reasoned that:

1.  The language of OHIO REV. CODE § 2919.22(B)(1), requires that the State prove recklessness as an essential element of endangering children under that portion of the statute. In this case, the State presented sufficient circumstantial evidence from which a jury could find recklessness proven beyond a reasonable doubt.
2.  The court reviewed the entire record and weighed the evidence, including the conflicting expert testimony and concluded that the evidence did not lead to the conclusion that the jury lost its way (Docket No. 10-1, pp. 55-62 of 157).

**E.**     *Appeal to the Supreme Court of Ohio.*

Petitioner filed a notice of appeal on November 5, 2012 (Docket No. 10-1, pp. 63-65 of 157).

In the memorandum in support, Petitioner presented four propositions of law:

FIRST PROPOSITION.

When Petitioner was a child at the time of the offense and a jury finds the child not guilty of knowingly causing serious physical harm that resulted in a person's death, but guilty of recklessly causing physical harm that resulted in a person's death, Petitioner cannot be guilty of felony murder. Eighth and Fourteenth Amendments, United States Constitution, Section 16, Article I and Section 3(B)(3), Article IV, Ohio Constitution; R.C. 2901.05(A).

SECOND PROPOSITION.

When Petitioner was a child at the time of the offense and is charged with murder in the commission of an offense of violence, the trier of fact must consider the child's age as it determines whether the state proved that the child acted with the requisite culpable mental state. Eighth and Fourteenth Amendments, United States Constitution, Section 16, Article I and Section 3(B)(3), Article IV, Ohio Constitution; R.C. 2901.05(A).

-4-

THIRD PROPOSITION.

Ohio's felony murder statute did not abrogate the common law merger doctrine; accordingly, a defendant cannot be convicted of felony murder where the underlying felony was endangering children that caused the death of the person.  Fourteenth Amendment, United States Constitution, Section 16, Article I and Section 3(B)(3), Article IV, Ohio Constitution; R.C. 2901.05(A).

FOURTH PROPOSITION.

A trial court errs when it accepts a jury's guilty verdict in the absence of sufficient evidence to support the convictions.  Fourteenth Amendments, United States Constitution, Section 16, Article I and Section 3(B)(3), Article IV, Ohio Constitution; R.C. 2901.05(A) (Docket No. 10-1, p. 67 of 157).

The Supreme Court declined to accept jurisdiction of the appeal pursuant to S.CT.PRAC.R. 7.08(B)(4)[1] on February 6, 2013 (Docket No. 10-1, p. 95 of 157).

## G.    Application for Reopening.

On December 18, 2012, Petitioner filed an application to reopen his direct appeal pursuant to OHIO APP. R.26(B), arguing that appellate counsel was ineffective for failing to brief and argue that:

1.    Trial counsel failed to request a jury instruction that considered the lessor included offense of reckless homicide.
2.    Petitioner could not be convicted of felony murder in the commission of a reckless act..
3.    Petitioner's prison term violates the constitutional provision against cruel and unusual punishment.
4.    The trier of fact must consider the child's age as it decides whether the State presented sufficient evidence that Petitioner acted recklessly.
5.    The common law merger doctrine prohibits the predicate felony from serving as the basis for the murder conviction.
6.     Petitioner should receive credit for time served (Docket No. 10-1, pp. 96-109 of

---

[1]

In relevant part, SUPREME COURT PRACTICE RULES 7.08(B)(4) requires that upon review of the jurisdictional memoranda, the Supreme Court will decline to accept the appeal upon determining that the appeal does not involve a substantial constitutional question and should be dismissed.

157).

On April 4, 2013, the court of appeals found that Petitioner had not demonstrated that he had a colorable claim of ineffective assistance of appellate counsel and his application was denied (Docket No. 10-1, pp. 110-113 of 157).

On May 17, 2013, Petitioner filed the Notice of Appeal in the Supreme Court of Ohio (Docket No. 10-1, p. 114-116 of 157).   Petitioner asserted five propositions of law in the memorandum in support:

FIRST PROPOSITION.

Trial counsel provides ineffective assistance by failing to request that the jury consider the lessor included offense of reckless homicide when the evidence was that the minor-child defendant acted recklessly, not knowingly.  R.C. 2907.02(E); Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution.

SECOND PROPOSITION.

When a jury finds that a minor-child defendant charged with felony murder acted recklessly, not knowingly, and the jury was not required to consider the defendant's age as it determined whether the state proved the requisite culpable mental state, the defendant's conviction violates his right to due process of law and protections against cruel and unusual punishment.  Eighth and Fourteenth Amendments to the United States Constitution, Section 16, Article I and Section 3(B)(3), Article IV, Ohio Constitution; R.C. 2901.05(A).

THIRD PROPOSITION.

Ohio's felony murder statute did not abrogate the common law merger doctrine; accordingly, a defendant cannot be convicted of felony murder where the underlying felony was child endangering.  Fourteenth Amendment, United States Constitution, Section 16, Article I and Section 3(B)(3), Article IV, Ohio Constitution; R.C. 2901.05(A).

FOURTH PROPOSITION.

R.C. 2929.19(B)(2)(g)(iii) permits, but does not require, correction of jail time credit by motion in the sentencing court.  Thus, there is a reasonable probability that had appellate counsel properly raised the trial court's jail time credit error in Petitioner's direct appeal, his appeal would

-6-

have been successful.

<b>FIFTH PROPOSITION.</b>

Appellate counsel provides ineffective assistance by failing to properly raise constitutional error to the court of appeals.  Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution (Docket No. 10-1, pp. 118-119 of 157).

The Supreme Court of Ohio declined to accept jurisdiction of the appeal pursuant to S.CT.PRAC.R. 7.08 (B) (4) on July 24, 2013 (Docket No. 10-1, pp. 141, 156-157 of 157).

**H.     *Petition for Writ of Habeas Corpus*.**

Petitioner was in the custody of Respondent at the Mansfield Correctional Institution when he filed a Petition under 28 U. S.C. § 2254 for Writ of Habeas Corpus in the United States District Court for Northern District of Ohio, Eastern Division, on June 6, 2014.  He asserted five claims:

<b>GROUND ONE</b>:

The state courts unreasonably applied *Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *J.D.B. v. North Carolina*, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2010); and *Miller v. Alabama*, 132 S.Ct. 2455, 183 L.Ed. 2d 407 (2012), by upholding Petitioner's conviction for felony murder in the commission of child endangering, because he was a child when he committed the offense, and the conviction required only that he acted with a reckless mental state. Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

<b>GROUND TWO:</b>

The state courts unreasonably applied *Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *J.D.B. v. North Carolina*, 131 S.Ct. 2394, 180 L.Ed.2d 310 (2010); and *Miller v. Alabama*, 132 S.Ct. 2455, 183 L.Ed. 2d 407 (2012), by upholding Ohio's felony murder statute as applied to a defendant under the age of eighteen, when the trier of fact is not required to consider the defendant's age as it determines whether the State proved the requisite culpable mental state. Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

<b>GROUND THREE:</b>

Petitioner was convicted absent sufficient evidence that he committed the offense, in violation of his right to due process of law under the Fifth and Fourteenth Amendments to the

United States Constitution; *Jackson v. Virginia*, 443 U.S. 307 (1979).

GROUND FOUR:

The Summit County, Ohio, Court of Appeals unreasonably applied *Strickland v. Washington*, 466 U.S. 668 (1984), when it ruled that the failure of Petitioner's trial counsel to request that the jury consider a lesser included offense of reckless homicide constituted effective assistance of counsel. Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

GROUND FIVE:

The Summit County, Ohio, Court of Appeals unreasonably applied *Evitts v. Lucey*, 469 U.S. 387 (1985), when it ruled that Petitioner's appellate counsel performed effectively despite counsel's failure to raise trial counsel's ineffectiveness, challenge the constitutionality of Ohio's felony murder statute, and challenge the application of felony murder as applied to Petitioner.  Fifth, Sixth, and Fourteenth Amendments to the United States Constitution (Docket No. 1, pp. 5-9 of 20).

III. STANDARD OF HABEAS REVIEW.

The Antiterrorism and Effective Death Penalty Act (AEDPA) standard of review applies to cases filed after the effective date on April 24, 1996.  *Cunningham v. Hudson*, 756 F.3d 477, 481 (6th Cir. 2014) (*citing Cleveland v. Bradshaw,* 693 F.3d 626, 631 (6th Cir.2012)).  A federal court may grant relief under AEDPA only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  *Id.* (*citing* 28 U.S.C. § 2254(d)(1)-(2)).

"Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions."  *Id.* at 481-482 (*citing White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted)).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling

-8-

on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (*citing Harrington v. Richter*, 131 S.Ct. 770, 786–87 (2011)).

       1.     STATUTE OF LIMITATIONS.

Under AEDPA, a state prisoner is required to file a habeas petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Rashad v. Lafler,* 675 F.3d 564, 567 (6thCir. 2012).  A judgment in a criminal case typically becomes final after direct review by the state courts and the United States Supreme Court or at the end of the time for seeking such review. *Id.* (*See Jimenez v. Quarterman*, 129 S.Ct. 681, 685 (2009)).  The Sixth Circuit has established that the one year statute of limitations does not begin to run until the time for filing a petition for a writ of *certiorari* for direct review in the United States Supreme Court has expired. *Robertson v. Simpson,* 624 F.3d 781, 782 (6thCir. 2010) (*see Lawrence v. Florida*, 127 S.Ct. 1079, 1083 (2007) (holding that "direct review" under section 2241(d)(1)(A) includes review by the U.S. Supreme Court)).

In this case, Petitioner pursued his direct appeal to the state court of last resort and the conviction became final when the Supreme Court of Ohio declined to accept jurisdiction of the appeal on February 6, 2013.  The statute began running 90 days later on May 6, 2013, the date when the time to seek review by *certiorari* in the United States Supreme Court expired.  The statute of limitations was tolled during the pendency of the application for reopening--from May 6, 2013 through July 24, 2013--and the statute expired on July 24, 2014.  Petitioner filed the instant Petition on March 27, 2014, thereby complying with the time limitations in which this request for habeas review could be brought.

2.    EXHAUSTION AND PROCEDURAL DEFAULT.

In habeas, state court remedies are described as having been exhausted when they are no longer available. *Starks v. Sheldon,* 2013 WL 3992592, \*31 (N.D.Ohio,2013) (*citing* 28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 109 S.Ct. 1056, 1059 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6ᵗʰ Cir.1991)).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies. *Id.* (*citing Rust v. Zent*, 17 F.3d 155, 160 (6ᵗʰ Cir.1994)).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies. *Id.* (*citing Anderson v. Harless*, 109 S.Ct. 890 (1982); *Picard v. Connor*, 92 S.Ct. 509 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6ᵗʰ Cir.1989)).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Id.* (*citing Picard*, 92 S.Ct. at 512; *see also Harris v. Reeves*, 794 F.2d 1168, 1174 (6ᵗʰ Cir.1986)). The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims. *Id.* (*citing Manning  v. Alexander*, 912 F.2d 878, 881–883 (6ᵗʰ Cir.1990)).

A petitioner cannot obtain federal habeas relief under 28 U.S.C. § 2254 unless he or she has completely exhausted all available state court remedies to the state's highest court. *Buell v. Mitchell*, 274 F.3d 337, 349 (6ᵗʰ Cir.2001) (*quoting Coleman v. Mitchell*, 244 F.3d 533, 538 (6ᵗʰ Cir.2001)) (internal quotation marks omitted)).  Rather than dismiss certain claims the Court deems unexhausted, a habeas court need not wait for exhaustion if it determines that a return to state court would be futile. *Lott v. Coyle*, 261 F.3d 594, 608 (6ᵗʰ Cir.2001).  In circumstances where the petitioner has failed to present a claim in state court, a habeas court may deem that claim procedurally defaulted because the Ohio state courts would no longer entertain the claim. *Buell, supra*, 274 F.3d at 349.  "The Ohio Supreme Court has stated that it will not consider constitutional

claims not raised and preserved in the Ohio Court of Appeals." *Fornash v. Marshall*, 686 F.2d 1179, 1185 n. 7 (6th Cir.1982) (*citing State v. Phillips*, 270 Ohio St.2d 294, 300 (1971)).

Federal courts need not review every point of error raised by a habeas petitioner. *Eley v. Bagley*, 604 F.3d 958, 964 (6thCir.2010). When a "state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice . . . or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Id.* (*citing Coleman v. Thompson*, 111 S.Ct. 2546, 2564-2565 (1991)). In the Sixth Circuit, to determine whether a federal claim has been procedurally defaulted, a three-prong test is applied as laid out in *Maupin v. Smith*, 785 F.2d 135 (6th Cir.1986):

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.

*Id.* (*citing Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir.2001) (*quoting Maupin*, 785 F.2d at 138)). If the state procedural rule was not complied with and that rule was an "adequate and independent" ground for default, the court may still excuse the default if the petitioner can demonstrate "that there was 'cause' for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error." *Id.* (*citing Maupin*, 785 F.2d at 138). In *State v. Cole*, 2 Ohio St.3d 112, 443 N.E.2d 169, 171 (1982), "the Ohio Supreme Court held that res judicata is a proper basis upon which to dismiss an ineffective-assistance claim in a petition for post-conviction relief where a defendant who is represented by new counsel on direct appeal fails to raise that claim and the basis for that claim 'could be fairly determined without examining evidence outside the record.' " *Id.*

-11-

(*citing Fautenberry v. Mitchell*, 515 F.3d 614, 633 (6th Cir. 2008), *cert. denied*, 129 S.Ct. 412 (2008)).  In *Fautenberry*, the court held that Ohio's application of res judicata pursuant to *Cole* is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently refuse to review the merits of a defendant's claims.  *Id.*

A petitioner may avoid the procedural default only by showing that there was cause for the default and prejudice resulting from the default or that a grave miscarriage of justice will result from enforcing the procedural default in the petitioner's case.  *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir.2000) (*citing Wainwright v. Sykes*, 97 S.Ct. 2497, 2506-2507 (1977)).  The "cause" for default standard in procedural-default cases requires the petitioner to show that "some objective factor external to the defense impeded counsel's efforts" to raise a claim in the state courts.  *Miles v. Bradshaw,* 2014 WL 977702, *9 (N.D.Ohio,2014) (*citing McCleskey v. Zant*, 111 S.Ct. 1454, 1469 (1991) (internal quotation marks omitted)).  Such factors may include interference by officials, an attorney error rising to the level of ineffective assistance of counsel, or a showing of a factual or legal basis for a claim that was not reasonably available.  *Id.* (*citing McCleskey*, at 1470).

The "prejudice" prong is an elusive concept but several guidelines can be discerned from the Supreme Court's pronouncements and the case law interpreting those pronouncements.  *Id.* at *10 (*citing Maupin v. Smith*, 785 F.2d 135, 139 (6th Cir.1986).  First, it is clear that the prejudice that must be shown must be a result of the alleged constitutional violation and not a result of the trial counsel's failure to meet state procedural guidelines.  *Id.* (*See United States v. Frady*, 102 S.Ct. 1584, 1594 (1982) (prejudice must result from the errors of which defendant complained)).  Second, the burden is on the petitioner to show that he or she was prejudiced by the alleged constitutional error.  *Id.* (*citing Frady*, 102 S.Ct. at 1595).  The petitioner must show that there was actual prejudice not merely a possibility of prejudice.  *Id.* (*See also Engle v. Isaac*, 102 S.Ct. at 1572).

-12-

Third, in analyzing a petitioner's contention of prejudice, the court should assume that the petitioner has stated a meritorious constitutional claim.  *Id.*  Thus, the examining court must determine whether the petitioner was prejudiced by his conviction based on allegedly insufficient evidence.  *Id.*

The fundamental "miscarriage of justice" exception is explicitly linked to a showing of the petitioner's actual innocence.  *Id.* at *11 (*citing Gibbs v. United States*, 655 F.3d 473, 477 (6th Cir.2011) *cert. denied*, 132 S.Ct. 1909 (2012)).  "Actual innocence" means "factual innocence, not mere legal insufficiency."  *Id.* (*citing Bousley v. United States*, 118 S.Ct. 1604, 1611 (1998)). I n other words, the habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him or her in light of new evidence.  *Id.* (*citing In re Byrd*, 269 F.3d 561, 573 (6th Cir.2001)).  Therefore the fundamental miscarriage of justice exception is available "only where the prisoner supplements his or her constitutional claim with a colorable showing of factual innocence."  *Id.* (*citing Herrera v. Collins*, 113 S.Ct. 853, 862 (1993) (*citing Kuhlmann v. Wilson*, 106 S.Ct. 2616, 2627 (1986)).

## A     FIRST AND SECOND CLAIMS.

Petitioner's first and second claims were only asserted in the memorandum in support of jurisdiction filed in the Supreme Court of Ohio.  The deliberate bypass of these claims in the state appellate court does not preserve the claims for habeas review.  The Supreme Court of Ohio expressly relied on *res judicata,* a doctrine firmly and regularly established at the time the case was presented to the Supreme Court.  It is well established that the application of *res judicata* is an adequate and independent state ground for barring habeas review of constitutional claims.  Where, as here, Petitioner can no longer present the federal claim in state court, he has waived these claims for purposes of federal habeas review and the doctrine of *res judicata* applies.

-13-

In the Traverse, Petitioner makes an impassioned argument for juvenile justice reform based on psychological precepts (Docket No. 12, pp. 11-21 of 29).  He failed, however, to offer a valid reason that *res judicata* should not apply to bar his claim.  Under the procedural default doctrine the "cause" standard requires more then counsel's argument; there must be some objective factor to the defense that impeded Petitioner's efforts to raise the claim.  Petitioner's argument, no matter how compelling, can neither be analogized to a "cause" rationale nor qualified as a "cause" requirement for overcoming procedural default.  Furthermore, Petitioner has failed to suggest there is new and reliable evidence which would make a credible claim for actual innocence.

Because Petitioner has procedurally defaulted his federal habeas claims one and two and he has failed to assert an argument that would permit the Court to overlook the default, federal habeas review is precluded.

### B.    THIRD CLAIM.

Petitioner's third claim–sufficiency of evidence–was presented on direct appeal and in the memorandum in support of jurisdiction filed in the Supreme Court of Ohio.  This claim is subject to review on its merits.

### C.    FOURTH CLAIM.

Petitioner failed to raise an independent claim of ineffective assistance of trial counsel in his appeal in any state forum.  Rather, he raised this issue as an independent claim for the first time in his Petition for Writ of Habeas Corpus.

It is well established that the Ohio Supreme Court will not consider constitutional claims not raised and preserved in the Ohio Court of Appeals and that Ohio's application of *res judicata* is an actually enforced, adequate and independent state ground upon which the Ohio state courts consistently deny merit review.  Therefore, under the *Maupin* analysis, Petitioner's ineffective

-14-

assistance of trial counsel claim is procedurally defaulted.

Petitioner suggests that trial counsel's ineffectiveness constitutes "cause" sufficient to overcome the procedural default. While courts have generally held that ineffective assistance of counsel can satisfy the "cause" prong to excuse procedural default, Petitioner has not presented the claim to the state court as an independent claim or demonstrated that trial counsel's alleged ineffectiveness rises to a level of an independent constitutional violation. Trial counsel's alleged ineffectiveness for failing to request a specific jury instruction cannot be used to establish "cause" for procedural default in this case. Since the "cause and prejudice" test is stated in the conjunctive, the Magistrate need not address whether Petitioner will be prejudiced by the Court's decision to decline habeas review.

Even though Petitioner has not shown "cause and prejudice," the Magistrate may correct a fundamental miscarriage of justice provided Petitioner offered facts which support a finding that constitutional errors resulted in the incarceration of an actually innocent person. Petitioner neither made such an argument nor supplemented the record with evidence suggesting actual innocence.

In conclusion, Petitioner's fourth claim for relief is procedurally defaulted such that a remedy in state court is unavailable within the meaning of Section 2254 and procedurally impossible to raise now. Because Petitioner has not articulated "cause and prejudice" or a "fundamental miscarriage of justice" to excuse the default, the Magistrate will not address the merits of this claim.

## C. FIFTH CLAIM.

Petitioner's fifth claim was appropriately presented to the appellate court in the application to reopen in the appellate court and in the memorandum in support of jurisdiction filed in the Supreme Court of Ohio, thereby preserving the right to habeas review.

-15-

**IV. HABEAS REVIEW STANDARD.**

The Supreme Court has made it clear that Section 2254(d), as amended by AEDPA, is a purposefully demanding standard. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) *cert. denied,* 132 S.Ct. 2376 (2012) (*See Harrington v. Richter*, 131 S.Ct. 770, 786 (2011) ("If [§ 2254(d)] is difficult to meet, that is because it was meant to be.")).  Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems and it does not function as a "substitute for ordinary error correction through appeal."  *Id.* (internal quotation marks omitted)).  For that reason, a federal court shall not grant a habeas petition with respect to any claim that was adjudicated on the merits unless the adjudication resulted in a decision that:

(1)   was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Id.* (*citing* 28 U.S.C. § 2254(d)).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court of the United States on a set of materially indistinguishable facts.  *Id.* (*citing Williams v. Taylor*, 120 S.Ct. 1495, 1523 (2000)).

Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court's application of clearly established federal law to the facts of the prisoner's case was objectively unreasonable.  *Id.* (*citing Williams, supra*, at 1521).  In construing the meaning of "unreasonable application" in § 2254(d)(1), the Court has emphasized that "an unreasonable

application of federal law is different from an incorrect application of federal law." *Id.* at 676-677 (*citing Williams*, *supra*, at 1521-1522; *accord Harrington*, *supra*, 131 S.Ct. at 785; *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)).  The reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under de novo review" and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (*citing Harrington*, 131 S.Ct. at 786; *Renico*, 130 S.Ct. at 1862 (stating that Section 2254(d)(1) "creates 'a substantially higher threshold' for obtaining relief than de novo review") (*quoting Schriro v. Landrigan*, 127 S.Ct. 1933, 1939 (2007))).

To obtain relief, the state criminal defendant "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (*citing Harrington*, 131 S.Ct. at 786–787).  This "highly deferential standard for evaluating state-court rulings  . . .  demands that state-court decisions be given the benefit of the doubt." *Id.* (*citing Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011) (internal citation and quotation marks omitted))

## V. ANALYSIS

Here, the Magistrate considers Petitioner's third and fifth claims which are not procedurally defaulted on the merits.

**1.  PETITIONER ARGUES THAT HE WAS CONVICTED ABSENT SUFFICIENT EVIDENCE THAT HE COMMITTED THE OFFENSE IN VIOLATION OF HIS RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND *JACKSON v. VIRGINIA*.**

Petitioner argues that there could not possibly be insufficient evidence on which to convict him.  The prosecutor presented evidence that he was the only person with Jada before she went into

-17-

cardiac arrest.  Petitioner's counsel argued that the evidence was circumstantial at best, emphasizing three salient points.  First, there is no link between Petitioner and the cause of death.  Second, Deja, Jada's mother, was with Petitioner and Jada before 8:00 A.M., when Petitioner gave Jada a bottle.  Third, when Petitioner realized his child was in distress, he sought immediate medical treatment.

> **A.**    **LEGAL FRAMEWORK FOR SUFFICIENCY OF THE EVIDENCE REVIEW.**

A conviction is supported by sufficient evidence if, any rational trier of fact, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime as defined by state law beyond a reasonable doubt.  *Lanier v. Sheldon*, 2013 WL 5531372, *15 (N.D.Ohio 2013) (*citing Pinchon v. Myers*, 615 F.3d 631, 643–644 (6th Cir.2010) *cert. denied*, 131 S.Ct. 2151 (2011) (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2789 (1979) (emphasis in original)).  In a habeas proceeding, the court will not simply conduct a *de novo* review of the state court's application of that rule, but must review its sufficiency-of-the-evidence decision under the highly deferential standard of AEDPA.  *Id.* (*citing Pinchon*, 615 F.3d at 643-644; *see Getsy v. Mitchell*, 495 F.3d 295, 315–316 (6th Cir.2007) (en banc) *cert. denied*, 128 S.Ct. 1475 (2008) ("Whether [the petitioner] is entitled to habeas relief ultimately depends on whether the [state court]'s denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence.")).  In effect, the court must determine whether it was objectively unreasonable for the state court to conclude that a rational trier of fact, after viewing the evidence in the light most favorable to the state, could have found that the petitioner committed the essential elements of the crimes charged beyond a reasonable doubt.  *Id.* (*citing Pinchon*, 615 F.3d at 643-644; *see Nash v. Eberlin*, 258 Fed.Appx. 761, 765 (6th Cir.2007) (unpublished)).

When addressing the sufficiency of the evidence questions, the court must not weigh the evidence, consider the credibility of the witnesses or substitute his or her own judgment for that of

the jury.  *United States v. Hilliard,* 11 F.3d 618, 620 (6[th]Cir. 1993) (*citing United States v. Evans,* 883 F.2d 496, 501 (6th Cir. 1989).  Instead, the court must look only to whether after reviewing "the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt."  *Id.* (*citing United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir.1992) (*citing Jackson v. Virginia*, 99 S.Ct. 2781, 2789 (1979)).  Indeed, even "circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not 'remove every reasonable hypothesis except that of guilt.' " *Id.* (*citing United States v. Ellzey*, 874 F.2d 324, 328 (6th Cir.1989) (*quoting United States v. Stone*, 748 F.2d 361, 363 (6th Cir.1984)).

> **B.**     **RESOLUTION.**

Petitioner faced a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds.  As noted above, the Magistrate considered all evidence in the light most favorable to the prosecution.  That means that it was the province of the jury to resolve conflicts in testimony, weigh evidence, assess credibility and draw reasonable inferences from basic facts to ultimate facts.  Thus, when considering the merits of Petitioner's claims, the Magistrate gave near-total deference under *Jackson,* taking care not to usurp the role of the jury by considering how conflicts should have been resolved, what inferences should have been made or how the evidence should have been considered at trial.

A review of the evidence adduced at trial showed that while minors, Petitioner and Deja Ruiz had three children of their own (Docket No. 10-6, p. 46 of 160).  During the early morning hours of March 19, 2010, Ms. Ruiz gave Jada a bottle and they both dozed until Ms. Ruiz got up at 7.  Ms. Ruiz put Jada back to sleep and she left the house shortly before 8:00 A.M. (Docket No. 10-6, pp. 45, 60 of 160).

Petitioner testified that he never witnessed Ms. Ruiz hurt or violently shake Jada on the morning of March 19, or at any time (Docket No. 10-9, pp. 74, 75 of 163). Rather, he saw Jada open her eyes but she was not fully awakened after Ms. Ruiz left (Docket No. 10-9, p. 27 of 163). He recounted propping a bottle on the blanket from the night before in Jada's mouth after her mother left and he saw her lips lock onto the bottle and suck (Docket No. 10-9, p. 29-30, 32 of 163).

Dr. Paul McPherson, a pediatrician (Docket No. 10-3, pp. 114, 159 of 213), and Dr. James Besunder, a board certified pediatric critical care physician (Docket No. 10-4, pp. 16, 18 of 160), described in graphic detail the physical abuse that Jada[2] and her twin sister[3] Jazmine, suffered. Dr. McPherson attributed Jada's brain injury to a lack of oxygen (Docket No. 10-3, pp. 123, 128 of 213; Docket No. 10-4, pp. 36-40 of 160) and the retinal bleeding behind Jada's eyes was attributed to severe force and flailing (Docket No. 10-3, pp. 121, 123, 127, 135, 145-146 of 213; Docket No. 10-4, p. 33 of 160).

Dr. Lisa Kohler, the chief medical examiner for Summit County, concluded that Jada had several fresh fractures and several fractures that showed evidence of healing. Pulling all of the evidence together, she concluded that Jada had been shaken violently which caused very severe brain injury which in turn affected her breathing centers and caused her to eventually stop breathing (Docket No. 10-4, pp. 88-89, 108-115, 151-152 of 129). The life support measures preserved her

---

[2]

Radiological evidence showed a fracture of Jada's left upper arm, a fracture of her right thigh bone, and a fracture of one of her lower right bones on the right side of the leg and a fracture of her left thigh bone and a fracture of one of the bones in the lower left side on her leg and bruising to the lower spinal cord as a result of blunt force blows (Docket No. 10-3, pp. 122, 124 of 213).

[3]

Jazmine had 8 different fractures in lower extremities and upper arm region and an irregularity of one of her ribs (Docket No. 10-3, p. 132 of 213).

body functions but such measures were ineffectual in sustaining Jada's ability to breathe normally, interact, eat and interact with her environment (Docket No. 10-4, pp. 129-130 of 160).

Dr. Jonathan Arden, a forensic pathologist, testified that he never examined Jada; however, he conducted an extensive evaluation of the diagnostic studies, police reports, various physician transcripts and hospital records and confirmed the presence of fractures, evidence of healing and head trauma.  It was his opinion that the subdural bleed was no more than a week old (Docket No. 10-8, pp. 40-43, 45-48, 58 of 169) and that "something happened" to Jada during the week prior to and including the morning Petitioner discovered her limp and unresponsive body (Docket No. 10-8, pp. 60-61 of 169).  While Dr. Arden could not pinpoint with medical certainty, what or when the abuse occurred, he responded affirmatively to hypothetical questions in which Ms. Ruiz could have damaged Jada prior to her departure at approximately 7:57 A.M.  If the damage process began then, it was likely that Petitioner could have observed Jada's slightly open eyes or saw her suck some milk from the bottle (Docket No. 10-8, pp. 75, 77-79 of 169).

In challenging his convictions, Petitioner does not dispute that Jada died from injuries consistent with "shaken infant syndrome."  Both parties recognize that the State based its case on circumstantial evidence reasonably substantiated and calculated for the jury to infer in accordance with their common sense that (1) Jada was currently and had been an abused child; (2) Petitioner had never seen Deja hurt Jada or Jazmine; and (3) if Jada's eyes were opened, she made sucking gestures and she drank milk after Deja left the home, then Petitioner, not Deja, was the last known person to see her alive.  When considering the cumulation of these individual pieces of evidence and viewing in a light most favorable to the prosecution, the inferences drawn from the circumstantial evidence adduced at trial are consistent with the hypothesis of guilt resulting from endangering the child.

-21-

Since there is sufficient evidence to support a criminal conviction, Petitioner is not entitled to habeas corpus relief.

**2.     PETITIONER CONTENDS THAT APPELLATE COUNSEL PERFORMED POORLY, FAILING TO RAISE ISSUES THAT WOULD HAVE CHANGED THE OUTCOME OF THE PROCEEDING.**

Petitioner cited  a number of arguments that appellate counsel did not make or did not make to his satisfaction.  Specifically, trial counsel's ineffectiveness; the constitutionality of Ohio's felony murder statute; and the application of the felony-murder rule applied to a juvenile.

**A.     THE LEGAL FRAMEWORK FOR ASSESSING APPELLATE COUNSEL'S PERFORMANCE.**

The proper standard for evaluating a claim that appellate counsel was ineffective is enunciated in *Strickland v. Washington*, 104 S.Ct. 2052 (1984).  *Smith v. Robbins*, 120 S. Ct. 746, 764 (2000) (*See Smith v. Murray*, 106 S.Ct. 2661, 2666-2667 (1986) (applying *Strickland* to claim of attorney error on appeal).  Respondent must first show that his or her counsel was objectively unreasonable, *see Strickland*, 104 S.Ct. at 2066-2067, in failing to find arguable issues to appeal, that is, that counsel unreasonably failed to discover non-frivolous issues and to file a merits brief raising them.  *Smith,* 120 S.Ct. at 764.  If petitioner succeeds in such a showing, he or she then has the burden of demonstrating prejudice.  *Id.*  That is, it must be shown with reasonable probability that, but for counsel's unreasonable failure, petitioner would have prevailed on the appeal.  *Id*. (*citing Strickland*, 104 S.Ct. at 2068) (defendant must show "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

To meet the deficient performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms.  *Pierce v. Bunting*, 2014 WL 5517256, at *8 (N.D. Ohio 2014) (*citing Strickland*, 120 S.Ct. at 2064-2065).  To meet the prejudice prong, there must exist a reasonable probability that, absent counsel's unprofessional

-22-

errors, the results of the proceeding would have been different.  *Id.* (*citing Strickland*, 120 S.Ct. at 2068).  The focus is on whether counsel's errors undermined the reliability of and confidence in the result when considering the prejudice element.  *Id.* (*citing West v. Seabold*, 73 F.3d 81, 84 (6th Cir.1996) (*citing Lockhart v. Fretwell*, 113 S.Ct. 838, 842-843 (1993)).  This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* (*citing Strickland*, 104 S.Ct. at 2065).

**B.** **RESOLUTION**.

**1.** **APPELLATE COUNSEL'S FAILURE TO ARGUE THAT TRIAL COUNSEL WAS INEFFECTIVE.**

Petitioner argues that appellate counsel should have challenged trial counsel's failure to request a jury instruction for a lessor included offense of reckless homicide and appellate counsel erred by failing to raise trial counsel's failure on direct appeal.

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel in his or her appeal as of right.  *Evitts v. Lucey,* 105 S.Ct. 830, 831 (Syllabus) (1985).  An accused is entitled to be assisted by an attorney who plays the role necessary to ensure that the trial is fair.  *Id.* at 835.  Because the right to counsel is so fundamental to a fair trial, the Constitution cannot tolerate trials in which counsel is unable to assist the defendant obtain a

fair decision on the merits.  *Id.*

In Ohio, a criminal defendant is entitled to a jury instruction on a lesser included offense only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense.  *Stoutamire v. Morgan*, 2011 WL 6934809, *16 (N.D. Ohio 2011) (*citing Jones v. Welch*, 2011 WL 1832760, *6 (N.D.Ohio 2011) (*citing State v. Thomas*, 40 Ohio St.3d 213, 216, 533 N.E.2d 286 (1988)).  The test for whether one offense is a lesser included offense of another is set forth in *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), which held that an offense may be a lesser included offense of another offense if (1) the offense carries a lesser penalty than the other; (2) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (3) some element of the greater offense is not required to prove the commission of the lesser offense.  *Id*.

Reckless homicide, pursuant to OHIO REV. CODE § 2903.041, is a lesser included offense of murder as defined in OHIO REV. CODE § 2903.02(B).  *State v. Wilson*, 182 Ohio App. 3d 171, 181, 912 N.E.2d 133, 140 (2009) (*See State v. Day,* 2004 WL 583880 (2004) (*citing State v. Jones,* 2002 WL 31478933 (2002)).  The reckless homicide statute, OHIO REV. CODE § 2903.041, provides:  No person shall recklessly cause the death of another * * *.  The murder statute under which Petitioner was convicted, OHIO REV. CODE  § 2903.02(B), provides:

> No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.

All of the elements of the greater offense, murder, are not required to prove the commission of the lessor offense.  Murder requires proof that a commission of a felony or the attempt at committing a

-24-

felony resulted in the proximate cause of a death.  However, the lessor offense, reckless homicide, requires that the offender acted with heedless indifference to the consequences and disregarded the known risks likely to cause harm.

The Magistrate is persuaded that trial counsel acted reasonably in not requesting a jury instruction on a lessor included offense where no construction of facts would have supported an acquittal of the murder charge.  The history of brutality confirmed by the medical examiner and two treating physicians was reasonably supportive of child endangering which resulted in murder.  In all reasonable probability, the outcome of the appeal would not have been different and Petitioner's conviction would have been affirmed.

For these reasons, the Magistrate concludes that the decision by trial counsel as to whether to request a jury instruction was a  matter of trial strategy.  Petitioner, claiming ineffective assistance during the deliberation phase of his trial,  has failed to rebut the presumption of competence mandated by *Strickland*, particularly when the trial counsel's failure to request a jury instruction on a lessor included offense did not deprive Petitioner of a fundamental right to a fair trial.  Since there is no evidence that trial counsel was ineffective, Petitioner suffered no prejudice when appellate counsel failed to bring an ineffective assistance of trial counsel claim.  Petitioner is not entitled federal habeas relief on this claim.

### 2. THE CONSTITUTIONALITY OF OHIO'S FELONY MURDER STATUTE AND ITS APPLICATION TO A MINOR.

Petitioner argues that appellate counsel failed to challenge the felony murder statute that permits a youthful offender to be sentenced to a mandatory fifteen years to life without regard for adolescent brain development, lack of impulse control and inability to react appropriately in stressful situations, all of which should lessen  culpability.

Inherent in the determination of how a particular juvenile fits within the system and whether the system is equipped to deal with the child successfully are considerations of adolescent development and competency.  See OHIO REV. CODE § 2152.13(D)(2)(a)(i).  The Magistrate points out that such distinction is not recognized once bindover occurs.  At that point, the youthful offender is no longer afforded the special consideration required for juveniles under juvenile justice but the juvenile is subject to rules of adjudication in adult court.

More importantly for habeas review, Petitioner's argument fails to overcome the strong presumption that appellate counsel rendered adequate professional judgment when making significant decisions.  Simply, Petitioner has failed to present a discussion of the state court application of a rule that contradicts the governing law set forth in Supreme Court's cases or confronts facts that are materially indistinguishable and then arrives at a different result.  Appellate counsel's performance was not deficient for failing to raise a challenge to the sentence rendered in adult court to a youthful offender particularly when Petitioner has failed to establish an actual or substantive disadvantage as a result of sentencing pursuant to an unconstitutional statute or that the application of the Supreme Court precedent necessarily involved an unreasonable application of federal law.  Therefore, Petitioner's appellate counsel could not have been constitutionally ineffective for failing to raise this issue.

## VII.  CONCLUSION

For the foregoing reasons, the Magistrate recommends the Court deny the Petition for Writ of Habeas Corpus and terminate the referral to the undersigned Magistrate Judge.


/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: January 21, 2015

## VIII. NOTICE.

Please take notice that as of this date the Magistrate Judge's report and recommendation attached hereto has been filed.  Pursuant to Rule 72.3(b) of the LOCAL RULES FOR NORTHERN DISTRICT OF OHIO, any party may object to this report and recommendations within fourteen (14) days after being served with a copy thereof.  Failure to file a timely objection within the fourteen-day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.  The objecting party shall file the written objections with the Clerk of Court, and serve on the Magistrate Judge and all parties, which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections.  Any party may respond to another party's objections within fourteen days after being served with a copy thereof.

Please note that the Sixth Circuit Court of Appeals determined in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) that failure to file a timely objection to a Magistrate's report and recommendation foreclosed appeal to the court of appeals.  In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the court of appeals to condition the right of appeal on the filing of timely objections to a report and recommendation.